IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRACY LAMONTE' SKINNER, #317270 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. JFM-14-145 |
| CPT. K. IBEADOGBULEM | * | |
| OFC. JULIET NGEH | | |
| LT. DAVID JOHNSON | * | |
| SGT. OWENS | | |
| OFC. FREDERICKS, CO II | * | |
| Defendants. | | |
| | ***** | |

MEMORANDUM

Tracy Skinner ("Skinner"), a Maryland inmate, filed this self-represented 42 U.S.C. § 1983 complaint for damages against Patuxent Institution correctional officers, alleging that they violated his rights under the Eighth Amendment by using excessive force. Defendants have filed a motion to dismiss or, in the alternative, for summary judgment, construed as a motion for summary judgment, and Skinner has filed oppositions. ECF Nos. 15, 18 & 20. The matter is ripe for disposition. For reasons that follow, the court will deny defendants' summary judgment motion.

Summary judgment is proper when the moving party demonstrates through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro,* 714 F.3d 828, 833-34 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett,* 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

Skinner's claims arise from an incident that allegedly occurred on June 1, 2013, while confined at Patuxent Institution. His verified complaint alleges that he wrote an administrative remedy on Patuxent Tier Officer Juliet Ngeh, who contacted Captain K. Ibeadogbulem to inform him of the remedy. Skinner asserts that Ibeadoglulem arrived on the tier and accused him of using profanity and disrespecting an officer, even though Skinner was silent. He then claims that he engaged in conversation with Captain Ibeadogbulem, who called a code on his radio and told him to lock in. Skinner alleges that both Ibeadogbulem and Ngeh grabbed him and he "shook them off of me and pushed them away..." He then claims he was punched in the stomach by inmate Jason Delong, and subsequently grabbed, punched in the face, kicked in the ribs and face, and stomped on the back of his neck by correctional officers **after** he complied with an order to lay on the ground. He claims that the assault left him unconscious and he was examined on site by medics and transported by ambulance to the Shock Trauma Unit of the University of Maryland Hospital Center, where he was treated for back and neck injuries and multiple contusions. ECF No. 1, Compl. at pgs. 3-6. Skinner claims that he could not file administrative remedy procedure ("ARP") grievances regarding the incident because he was placed on isolation and denied access to writing material. *Id.*, Compl. at pg. 7.

Defendants provide a significantly different factual background concerning the incident. They state that Skinner is a "mental health inmate" who was housed in the Correctional Mental Health Center at Patuxent Institution. Defendant Ngeh reported that during the morning of June 1, 2013, Skinner was cursing out loud. When questioned regarding his disrespectful language, Skinner

indicated that he was speaking to his cell mate who was in the shower and he was going to call home. When Skinner came out of the shower area, he punched Ibeadogbulem in the head and face. When Ngeh tried to intervene, Skinner knocked her against the wall. Defendants affirm that at this time, Skinner's cell mate, Daniel Rector, joined him and they both continued hitting and kicking Ibeadogbulem while he was lying on the floor. Other officers responded to the scene and stopped the assault. ECF No. 15, Ex. 5 at Ngeh Decl.

Correctional Officer Diane Komgeum affirms that she observed Skinner cursing at Ibeadogbulem and then saw Skinner hit the Captain with a closed fist. She further observed Ngeh attempt to assist Ibeadogbulem, but Skinner pushed her against a wall. *Id*., Ex. 6 at Komgeum Decl. Komgeum maintains that she temporarily left the scene to allow responding officers into the secured door, and when she returned she observed Ibeadogbulem lying on the floor with blood on his face and uniform shirt. *Id*. Correctional Officer Owens affirms that when he responded to a call for officer in need of assistance, he observed Skinner and his cellmate Daniel Rectos standing over Ibeadogbulem, who was lying face down in a pool of blood. Owens maintains that he instructed both inmates to get on the ground, but both were combative and assaulted him. Owens stated that he blocked a punch and grabbed Skinner, who was then subdued when other correctional officers arrived on the scene. *Id*., Ex. 7 at Owens Decl. Owens' affirmations are corroborated by that of defendant Fredericks, who maintains that he observed Ibeadogbulem laying down on the floor in a pool of blood, with Skinner and Rector standing over him in combative stances. He affirms that Skinner continued to struggle until other officers arrived and helped to subdue him. *Id*., Ex. 8 at Fredericks Decl.

The Internal Investigation Unit ("IIU") Report provided by defendants is factually on point with the declarations provided by defendants and other officers. It states that:

> "Captain Kenneth Ibeadogbulem and CO II Juliet Ngeh was conducting security rounds and Inmate Tracy Skinner #317270 started a verbal altercation with Captain

3

> Ibeadogbulem.  Inmate Skinner then struck Captain Ibeadogbulem in the face and head several times with closed fists.  CO II Ngeh attempted to assist and was thrown into the wall by Inmate Skinner. At some point Inmate Skinner's Cellmate (Inmate Daniel Rector #363751) began striking Captain Ibeadogbulem with closed fists.  Captain Ibeadogbulem, CO II Ngeh and Inmate Daniel Rector were transported to Howard County General Hospital for treatment of their injuries."
>
> No surveillance cameras in the facility captured this incident."

ECF No. 15, Ex. 2.

Defendants provide medical records to show that a contemporaneous evaluation was made of the involved parties.  Nurse Sarah Bangbade noted that Ibeadogbulem was responsive but bleeding from bruises and lacerations.  Skinner was found to have swelling on both sides of his face and minor bruises around the face and head.  Skinner, who was treated at the University of Maryland Hospital Center's Shock Trauma Unit,  received care for multiple contusions, abrasions, and a lip laceration.  A CT Scan of his whole body was normal. The summary noted facial pain and prescribed the use of a "Miami J collar" for one week, with a recommended follow-up appointment in one week.  *Id*. Exs. 2 & 10.

In his opposition "affidavit" Skinner affirms that he  wrote an ARP on defendant Ngeh and initially had difficulty getting Ibeadogbulem to sign off on it. ECF No. 18.  Skinner maintains that he engaged in several discussions with Ibeadogbulem, resulting in the officer calling a code, and that both Ngeh and Ibeadogbulem grabbed his arms in an effort to put him in his cell.  He states that he "shook loose from Ibeadogbulem" and "pushed him away from me."  Skinner reaffirms that at that time Patuxent inmate Jason DeLong attacked him and punched him repeatedly in the chest and stomach. *Id*.  He maintains that his cell mate, Daniel Rector, then started hitting both officers  and "after both my hands were free I attempted to keep everyone at least arms length away from me by pushing them away."  Skinner alleges that "when he saw an opening he went through it" and walked to his cell. Skinner maintains that Correctional Officer Owens ordered him to lie on the ground and

he complied without any resistance. *Id.* He claims that after he lay on the ground, Owens ordered officers to "fuck him up" while he was in handcuffs behind his back and Owens and two officers beat him while he was handcuffed, and repeatedly stomped and kicked him. Skinner states that he was maliciously beaten and denies that he kicked or hit Ibeadogbulem, Ngeh or any other officers with his feet or a closed fist. ECF Nos. 18 & 20.[1]

Skinner's claims are subject to the administrative exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Under the PLRA, prisoners must exhaust their administrative remedies before filing claims under § 1983. *See* 42 U.S.C. § 1997e(h) ("[T]he term 'prisoner' means any person ... detained in any facility who is accused of ... violations of criminal law...."). Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Skinner was therefore required to exhaust his administrative remedies prior to filing this lawsuit. There is no dispute that Skinner did not file an ARP regarding the June 1, 2013 incident at issue. Scott Oakley, Executive Director of the Inmate Grievance Office ("IGO"), avers that Skinner filed just one grievance with the Inmate Grievance Office back in October of 2010, and failed to otherwise exhaust administrative remedies as to the excessive force issue. ECF No. 15, Ex. 1, Oakley Decl. Defendants, through the Declaration of Kristina M. Donnelly, affirm that Skinner was housed

---

[1] The medical records attached to Skinner's affidavit show that he suffered "blunt trauma" with facial contusions. ECF No. 18, Ex. 1 at pgs. 1-2.

on the Patuxent Institution mental health center/segregation unit from June 1, 2013 through July 8, 2014, and that although the ARP forms are "readily available to every Patuxent inmate," Skinner did not file an ARP. *Id.*, Ex. 2, Donnelly Decl. Throughout his pleadings Skinner claims that he was prevented from instituting or completing the ARP process because he was assigned to isolation, denied writing material, and was not permitted access to ARP forms. *See* ECF Nos. 1, 18, 20.

Prison officials may not take unfair advantage of the exhaustion requirement and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, or if they otherwise act to prevent a prisoner from exhausting his administrative remedies. *See Moore v. Bennett,* 517 F.3d 717, 725 (4th Cir. 2008). Thus, a court may excuse a prisoner's failure to exhaust an administrative remedy if a prisoner "through no fault of his own, was prevented from availing himself of" the remedy. *Id.* The burden of showing that administrative remedies were unavailable lies with the plaintiff. *See, e.g., Graham v. Gentry,* 413 F. Appx. 660, 663 (4th Cir. 2011) ("[I]n order to show that a grievance procedure was not 'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure.") (citing *Moore,* 517 F.3d at 725).

To be sure, if prison officials impede a prisoner's attempts to exhaust by denying that inmate the proper forms, by failing to educate the inmate on the grievance process, or by failing to respond to a proper grievance, a prisoner may be excused from exhaustion requirements. *See Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir. 2001). Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance, or if they otherwise act to prevent a prisoner from exhausting his administrative remedies. *See Moore,* 517 F. 3d at 725;

*see also* Gary Proctor, *Ngo Excuses: Proving, Rebutting, and Excusing Failure to Exhaust Administrative Remedies in Prisoner Suits after Woodford v. Ngo and Jones v. Bock,* 31 Hamline L.Rev.471, 487–489 (2008).

In light of factual information presented to the court, there is some question as to whether plaintiff's attempts to file grievances were impeded by prison personnel. The court cannot say on the record before it that Skinner did not exhaust "available" administrative remedies.[2] As such, the court will consider the merits of Skinner's claims.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkins v. Gaddy*, 559 U.S. 34, 36-39 (2010). It is the nature of force used by the correctional officer, rather than the extent of the prison inmate's injury, that is the relevant inquiry in an Eighth Amendment claim. *See Hill v. Crum*, 727 F.3d 312, 320-321 (4th Cir. 2013). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. Not every

---

[2]  Although not noted by defendants, this court is familiar with the Division of Correction's practice to decline an investigation for an ARP where one is already pending before the IIU. Thus, the court concludes that the exhaustion requirement regarding the alleged excessive use of force is satisfied where, as here, the administrative procedure is unavailable.

malevolent touch by a prison guard, however, gives rise to a federal cause of action for excessive force in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. *Id*. at 37.

Viewing the facts in a light most favorable to Skinner, he has been challenged to show that correctional officers maliciously applied force. There is no material dispute that Skinner was initially argumentative and that his behavior became physically and verbally aggressive and disruptive on the tier. He admits to escalating the situation and was otherwise being difficult by "pushing" the officers away when they attempted to place him in his cell.

Where, as here, there are factual disputes that are relevant and necessary in the determination of the outcome of the suit, summary judgment is precluded. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986). Plainly, there are genuine disputes of material facts concerning the events following the argument between Ibeadogbulem and Skinner, including questions as to whether Skinner, himself, assaulted Ibeadogbulem and Ngeh and whether he was maliciously kicked, stomped on, or punched by responding officers either before or after he had been placed in restraints. The parties factually disagree as to the precise extent of force subsequently used and the need for that force.

It is not the role of the court on summary judgment to determine the truth of the matter or to make a credibility determination. The court is mindful that the minimal medical exhibits indicate that Skinner was transported to University of Maryland Medical Center's Shock Trauma Unit. This court cannot, on the record before it, make an assessment as to whether the force was maliciously applied or reasonably used to subdue Skinner even under the facts he has presented.

For the aforementioned reasons, defendants' motion, construed as a motion for summary judgment, shall be DENIED. The complaint alleging excessive force shall proceed. Skinner shall be granted an additional period of time to seek the appointment of counsel. A separate Order follows.


Date:___February 19, 2015              __/s/_____
                                        J. Frederick Motz
                                        United States District Judge